Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 11/17/2022

# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Pinnacle Constructors, Inc., | ) | Case No. 3:22-bk-00670 |
| and Kevin Webb, | ) | Chapter 11, Subchapter V |
| | ) | Judge Randal S. Mashburn |
| Debtors. | ) | (Jointly Administered) |

| | | |
|---|---|---|
| Hayes Pipe Supply, Inc., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:22-ap-90072 |
| | ) | (Lead Adversary) |
| Aegis Security Insurance Company, | ) | |
| and Hawkins & Price, LLC, | ) | |
|     Defendants. | ) | |

| | | |
|---|---|---|
| Hawkins & Price, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:22-ap-90083 |
| | ) | |
| Aegis Security Insurance Company, | ) | |
|     Defendant. | ) | |

## ORDER AND MEMORANDUM OPINION ON
## MOTION FOR PARTIAL SUMMARY JUDGMENT

    A determination about the nature of surety bonds issued in connection with two of Debtor's construction projects will help move this litigation a step closer toward a resolution. A critical state law issue – whether the surety bonds are "common law bonds" or "statutory bonds" – is the primary question in competing requests for

partial summary judgment. Tennessee law applied to undisputed facts dictates a finding that the bonds are common law bonds.

Plaintiffs Hayes Pipe Supply, Inc. and Hawkins & Price, LLC filed a joint motion for partial summary judgment on three issues that the parties agreed were threshold issues that the Court should hear early in the case. The motion was opposed by defendant Aegis Security Insurance Company, who sought a contrary resolution of those threshold issues. The parties fully briefed the issues, and the Court heard argument on November 8, 2022.

None of the issues is fully dispositive of the claims, but instead the parties agreed that the resolution of the issues will shape the cases and the parties' discussions going forward. (Pretrial Order, Doc. 21.) The first issue, whether bonds issued by Aegis are common law bonds or statutory bonds, could be determinative of the other two issues, which the parties agreed would only apply if the Court determines the bonds to be statutory. Since the Court finds the bonds to be common law bonds, it is not necessary to address the other two issues.

## FACTS

The facts relative to the Court's decision regarding the nature and scope of the bonds are minimal and not disputed. Hayes Pipe and Hawkins & Price have asserted claims on a certain payment bond, Bond No. B10037030, that Aegis issued in connection with Debtor Pinnacle Constructors, Inc.'s project for Consolidated Utility District, in Rutherford County, Tennessee, at the Rocky Fork Road Water Line Replacement – Phase 2 (the "CUD Bond"). (CUD Bond, Doc. 25, Ex. 2/Doc. 25-2.)

Hawkins & Price asserts a claim on another payment bond, Bond No. B100337031, that Aegis issued in connection with Debtor's project for Water Line Additions for the Marshall County Board of Public Utilities (the "Marshall County Bond"; collectively with the CUD Bond, the "Bonds"). (Marshall County Bond, Doc. 25, Ex. 8/Doc. 25-8, pp. 4-6.)

There is no dispute that the Bonds were issued in connection with public works projects, or that the Bonds were required by Tennessee law, Tenn. Code Ann. § 12-4-201(a)(1).

Aegis issued the Bonds as "Surety," with Debtor being the "Contractor" and "Principal" under the Bonds. Aegis agreed to be bound "subject to the terms printed on the" CUD Bond and "subject to the terms set forth" in the Marshall County Bond. The terms of the Bonds are integral to the Court's determination of whether they are common law or statutory bonds.

At the heart of the parties' dispute is the meaning and effect of a single paragraph – number 13 – in the Bonds, which states:

> 13. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and the provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not a common law bond.

(Bonds, ¶ 13, "Paragraph 13".)

## DISCUSSION

### I. Summary Judgment Standard

Although the parties agreed to a scheduling process involving the Plaintiffs filing a motion for summary judgment and Aegis responding (*see* Pretrial Order), both sides are seeking a determination that would be dispositive of the threshold issue. As agreed by the parties, the Court is treating the Plaintiffs and Aegis as cross movants for partial summary judgment. A movant is entitled to summary judgment upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. Once a summary judgment movant has met its burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must cite to "specific facts showing that there is a genuine issue for trial." *Haddad v. Gregg*, 910 F.3d 237, 243 (6th Cir. 2018) (citation omitted).

There are no disputed facts affecting resolution of the bond issue. The parties agree that partial summary judgment may be entered on that point, although obviously they argue for differing conclusions.

## II. Common Law vs Statutory Bonds Under Tennessee Law

### A. Tennessee Law

Bonds issued in connection with public works projects may be either common law bonds or statutory bonds. The Tennessee Supreme Court explained the distinction and its significance as follows:

> Every general contractor who undertakes a public work in Tennessee must furnish a bond that complies with certain minimum statutory criteria. The basic statute addressing these bonds, Tenn. Code Ann. § 12–4–201, provides in pertinent part that:
>
> No contract shall be let for any public work in this state, by any city, county or state authority, until the contractor shall have first executed a good and solvent bond to the effect that the contractor will pay for all labor and materials used by the contractor, or any immediate or remote subcontractor under the contractor, in such contract, in lawful money of the United States.

*Koch v. Constr. Tech., Inc.*, 924 S.W.2d 68, 74 (Tenn. 1996).

Thus, the starting point is that Tennessee dictates that government construction projects cannot proceed without a surety bond in place to ensure that the labor and materials get paid. As further explained in the *Koch* decision, the statute also includes several specific minimum standards that the bonds must satisfy:

> Although a subcontractor or other furnisher of labor or materials may sue under this bond, Tenn. Code Ann. § 12–4–204, such a person must notify interested parties of its claim before initiating the suit. Tenn. Code Ann. § 12–4–205. Moreover, the party must bring the action within six months following the completion of the public work, or of the furnishing of the labor or materials. Tenn. Code Ann. § 12–4–206.
>
> These statutes, however, merely set forth the minimum requirements; the principal and surety on the bond work are free to provide suppliers of labor and materials with more rights and privileges than those called for by the statutes if they so desire. If the principal and surety extend rights above and beyond those contained in the statutes, the bond is

> characterized as a common-law bond and is enforceable as written. *National Surety Corp., v. Fischer Steel Corp.*, 213 Tenn. 396, 374 S.W.2d 372 (1964); *Wal–Board Supply Co., v. Daniels*, 629 S.W.2d 686 (Tenn. App. 1981).

*Id.* Stated differently, as a general rule, "a bond, whether required by statute or not, is good at common law if entered into voluntarily for a valid consideration, and if it is not repugnant to law or that policy of the law, the surety is bound according to its terms [and] such bond is treated as simply a contract." *National Surety Corp. v. Fischer Steel Corp.*, 374 S.W.2d 372, 375 (Tenn. 1964) (quoting *Day v. Walton*, 281 S.W.2d 685, 691 (Tenn. 1955)).

Thus, under Tennessee law, if a bond is merely a statutory bond, the statute supplies the terms and the statute controls. If the bond is a common law bond, then the express contractual terms will govern so long as they meet the minimum statutory requirements. In that case, the bond is enforced as written and its contractual terms will be enforced.

It is clear from the *Koch* case and other governing Tennessee decisions that this state recognizes what the Court will refer to as the "greater rights" factor – that there is nothing wrong with a surety providing more extensive rights to the bond beneficiaries than what the statute would dictate. When that occurs, it will be considered a common law bond.

The Tennessee Supreme Court in *Koch* also found these two additional factors relevant to its determination that the bond in question was a common law bond: that (i) the bond made "no explicit reference to the Tenn. Code Ann. § 12-4-201 – 12-4-206," and (ii) "it neither expressly set[] forth any notice requirements nor limit[ed] the time for bringing an action on the bond." *Koch*, 924 S.W.2d at 74; *see also White's Elec., Heating, Air and Plumbing v. Lewis Constr. Co.*, 1999 WL 605654, at *10 (Tenn. Ct. App. Aug. 11, 1999) (enumerating and restating the three *Koch* factors as follows: "(1) whether the obligations of the surety and contractor go beyond the statutory obligations, (2) whether the bond references the relevant Tennessee Code provisions, and (3) whether the bond contains notice or time limitations.").

Therefore, Tennessee weighs three basic factors in determining whether a bond will be treated as a common law bond and enforced based on the contractual terms rather than merely applying the minimum statutory requirements. Does the bond grant greater rights than required by statute? Does it refer to the relevant statutes? Does it contain notice or time limitations?

### B. Greater Rights

Tennessee courts have recognized that bonds may convey greater than statutory rights in a myriad of ways. One way is by expanding the surety's scope of liability. *See, e.g.*, *Koch*, 924 S.W.2d at 74 (finding that the bond's requirement that the principal and surety pay "all just claims for damages or injury to property" expanded on the statute's minimum coverage requirement of "labor and materials"); *Wal-Board Supply Co., Inc. v. Daniels*, 629 S.W.2d 686, 688 (Tenn. Ct. App. 1981) (finding bond that protected "all laborers and furnishers of material" as required by Tennessee statutes "and also independently of said Statutes" was a common law bond) (quoting the bond at issue); *Hogan v. Walsh & Wells, Inc.*, 177 S.W.2d 835 (Tenn. 1944) (same); *White's Elec.*, 1999 WL 605654, at *10 (holding that bond that required the principal and surety to pay for "all insurance premiums on said work" in addition to labor and materials was a common law bond).

Another way is in extending the limitations period for suing on the bonds. *See, e.g., National Surety Corp.*, 374 S.W.2d at 376 (finding a one-year limitations period, instead of the six-month period set by Tenn. Code Ann. § 12-4-206, to "[give] rights over and beyond" the statute, which was a factor in favor of finding the bond to be a common law bond).

Yet another method is altering or waiving notice provisions to the benefit of a claimant. *See, e.g., id.* (finding the bond at issue to be a common law bond in part because it permitted a particular type of claimant to sue the surety without giving the 90-day notice otherwise required by Tenn. Code Ann. § 12-4-205, formerly numbered § 12-421).

Plaintiffs argue that the CUD Bond and Marshall County Bond, which are identical in material respects, expand upon the statutory requirements in several

ways. These asserted expansion provisions can be placed in two categories: (i) the coverage provisions and (ii) the notice and limitations provisions.

### i. Coverage Provisions

The Tennessee statute provides as follows:

> (a)(1) No contract shall be let for any public work in this state, by any city, county or state authority, until the contractor shall have first executed a good and solvent bond to the effect that the contractor will pay for *all the labor and materials* used by the contractor, or any immediate or remote subcontractor under the contractor,

Tenn. Code Ann. § 12-4-201(a)(1) (emphasis added).

The plain language of the statute only requires that the bond cover all "labor and materials." *Id*. The Plaintiffs argue, without significant dispute by Aegis, that the Bonds expand on the statute's coverage requirement by requiring Aegis to pay for all "labor, materials, *and equipment*." (Bonds ¶ 1 (emphasis added).) Additionally, the Bonds include within "labor, materials or equipment," without limitation:

> that part of water, gas, power, light, heat, oil, gasoline, telephone service, or rental equipment used in the Contract, architectural and engineering services required for performance of the Work of Contractor and Contractor's Subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials, or equipment were furnished.

(Bonds ¶ 15.1.) Aegis conceded during oral argument that equipment and utility services were expanded coverage benefits.

The Court finds that the Bonds do indeed confer greater rights to claimants than the statutory minimum by extending coverage to equipment and by defining "labor, materials, and equipment" to include utilities.

### ii. Notice and Limitations Provisions

#### a. Claim Notice Procedures

The Tennessee statute requires that notice of claims be provided in pertinent part as follows:

> Such furnisher of labor or material, or such laborer, to secure the advantage of §§ 12-4-201 -- 12-4-206, shall, after such labor or material

is furnished, or such labor is done, and within ninety (90) days after the completion of such public work, give written notice by return receipt certified mail, or by personal delivery, either to the contractor who executed the bond, or to the public official who had charge of the letting or awarding of the contract; ….

Tenn. Code Ann. § 12-4-205. The statute goes on to describe the content of the notice and when notice to a public official is deemed sufficient. *Id.*

The Bonds contain different notice requirements, most of which might be considered neutral in terms of whether they grant a greater benefit than the statute (e.g., to whom notice must be given and the content of notices). More significantly, the Bonds contain no deadline for claimants who are employed by or have a direct contract with Contractor to give notice of their claim.[1] (Bonds ¶ 4.1.) Having no deadline to provide notice is a benefit to those particular claimants above and beyond the notice requirement of the statute since it is one less potential pitfall that could result in denial of a claim. *See National Surety Corp.*, 374 S.W.2d at 376 (finding bond that permitted a particular type of claimant to sue the surety without giving the notice was a right over and beyond the statutory notice requirement). This is another factor weighing in favor of treating the Bonds as common law bonds.

### b. Limitation Period for Suit

The Tennessee statute requires suit "within six (6) months following the completion of such public work, or of the furnishing of such labor or materials." Tenn. Code Ann. § 12-4-206. The Bonds provide in paragraph 11:

> 11. No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the Work or part of the Work is located or after the expiration of *one year from the date (1) on which the Claimant gave the notice required by Paragraph 4.1 or Paragraph 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs.* If the provisions of this paragraph are void or

---

[1] In contrast, the Bonds require that claimants who do not have a direct contract with Contractor send notice "within 90 days after having last performed labor or last furnished materials or equipment." (*Id.* ¶ 4.2.1.)

> prohibited by law, the minimum period of limitations available to sureties as a defense in the jurisdiction of the suit shall be applicable.

(Bonds § 11 (emphasis added)). One year for filing suit is clearly longer and much more generous to claimants than the six-month period under the statute. Unless the Court were to interpret paragraph 13 of the Bonds as deleting the differing limitations provision of the Bonds and replacing it with the statutory provision, as argued by Aegis, this provision grants a benefit to claimants that is significantly "above and beyond" the statutory minimum, as supported by Tennessee Supreme Court precedent.

In *National Surety Corp v. Fischer Steel Corp.*, 374 S.W.2d 372 (Tenn. 1964), the Tennessee Supreme Court found the bond at issue to be a common law bond because, among other things, it included a longer limitations period. That bond provided:

> The bond further provides no suit or action shall be commenced by any claimant 'after the expiration of one (1) year following the date on which Principal ceased to work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.'

*Id.* at 374. Regarding the second part of that section, the court held that "[t]here is no law prohibiting the contractual period of limitation contained in the bond." *Id.* at 377. The court found that the extended limitation period and the waiver of notice discussed above were "rights given … over and beyond any of the provisions of the applicable statutes." *Id.* at 376. The court further noted that there was no reference to the statutes in the bond. *Id.* at 377. Based on these factors, the court held that the bond was "a valid common law contract enforceable … according to its terms." *Id.*

Thus, as written, the Bonds provide a greater limitation period than the statute, which favors a finding that the Bonds are common law bonds.

### C. Additional Factors

The second factor for the Court's consideration is whether the Bonds reference the relevant Tennessee Code provisions. *See White's Elec.*, 1999 WL 605654, at *10; *see also Koch*, 924 S.W.2d at 74. As in *Koch*, the Bonds make no explicit reference to the Tennessee Code. The only reference is non-explicit:

> When this Bond has been furnished to comply with a statutory requirement in the location where the Contract was to be performed, any provision in this Bond conflicting with said statutory requirement shall be deemed deleted herefrom and provisions conforming to such statutory requirement shall be deemed incorporated herein.

(Bonds, ¶ 13.) It appears from *Koch* that a reference to the statute by citation may be required for this factor to support a determination that the bond is statutory. *Koch*, 924 S.W.2d at 74. The parties cited no Tennessee case that considered a generic reference to "statutes" to weigh in favor of a determination that a bond is statutory. Regardless, this factor is not heavily weighted, even when explicit reference is made. *See, e.g., Wal-Board Supply Co.*, 629 S.W.2d at 688 (Finding a bond to be common law even though it expressly incorporated a particular Tennessee statute by reference to supply a term. In the court's analysis, the statutory reference apparently did not outweigh the first factor, which was satisfied by the bond granting claimants greater rights than required by statute.).

The third factor, whether the bond contains notice or time limitations, is clearly satisfied by the Bonds. As discussed above, the Bonds contain their own notice and time limitations distinct from the statute, which weighs in favor of a finding that the Bonds are common law.

### D. Weighing the Factors

In summary, the Court finds that the factors considered relevant under Tennessee law dictate that the Bonds be construed as common law bonds. There is no doubt that the Bonds provide claimants with greater rights than the statutory minimums, particularly when it comes to broadening the coverage to equipment and utilities rather than merely labor and materials, by imposing no deadline for notice by certain claimants, and by extending the limitation period for filing suit to one year.

Further, there is no explicit reference to the Tennessee statutes, and the Bonds include pertinent time and notice provisions. All the boxes are checked in favor of a finding that these are common law bonds that should be enforced as written.

The Court could reach the contrary conclusion that these are statutory bonds only if all those greater rights and differing notice requirements are treated as null and void and considered to be wiped out of the contracts by virtue of Paragraph 13. That leads the Court to a review of the issue that is at the heart of the parties' dispute: what effect does that single paragraph have on the interpretation of the Bonds.

### III. Interpretation of Paragraph 13

The fundamental issue is whether this paragraph is a "savings clause" intended to assure compliance with the statute or some type of "elimination" or "deletion" clause that renders all the "greater rights" provisions of the Bonds ineffective. Under the Aegis interpretation, all provisions of the Bonds that differ from the statute should be treated as removed from the Bonds by virtue of this one paragraph, which states:

> 13. When this Bond has been furnished to comply with a statutory requirement in the location where the Contract was to be performed, any provision in this Bond conflicting with said statutory requirement shall be deemed deleted herefrom and provisions conforming to such statutory requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory Bond and not as a common law bond.

(Bonds ¶ 13.) In addition to offering differing arguments of general statutory and contractual interpretation, the parties cite specifically to two cases from other jurisdictions in which the courts interpreted paragraphs in public bonds that were substantially similar to the Aegis Bonds' Paragraph 13. Aegis urges the Court to follow the New Hampshire Supreme Court's rationale and holding in *Fastrack Crushing Servs., Inc. v. Abatement Int'l/Advatex Assocs., Inc.*, 149 N.H. 661, 665, 827 A.2d 1019, 1023 (2003). Plaintiffs urge the Court to follow a Michigan federal district court's rationale and holding in *Trustees for Michigan Laborers' Health Care Fund v. Warranty Builders, Inc.*, 921 F. Supp. 471, 476–77 (E.D. Mich. 1996), *aff'd sub nom.*

*Trustees for Michigan Laborers' Health Care Fund v. Seaboard Sur. Co.*, 137 F.3d 427 (6th Cir. 1998).

In *Fastrack*, the New Hampshire Supreme Court held that a paragraph 13 that was the same in all material as the Aegis Bonds' Paragraph 13 required that the statute's notice provision be applied, not the different provisions written in the bond. The court recognized the general principal that expanded notice provisions would result in treatment of a bond as a common law bond but found that paragraph 13 negated that effect. It reasoned as follows:

> The language [in paragraph 13] anticipates that the bond may be used both in contexts where it is statutorily required, and in contexts where it is not. If used in a non-statutory context, the terms of the bond control. But if, as in this case, the bond is statutorily required, the bond states that any conflict between the terms of the bond and statute are resolved in favor of the statute. The notice terms within the bond, thus, are "deemed deleted" if they conflict with those in the statute.
>
> *666 Fastrack argues that the phrase "statutory or legal requirement" in paragraph 13 should only be interpreted to encompass the statutory requirement that the bond be furnished (i.e., RSA 447:16), and not the notice provisions included thereafter. It also argues that no "true conflict" exists between the notice provisions of the bond and statute because it is possible for a claimant to comply with both requirements. Both of these technical arguments, however, ignore the mandate in paragraph 13 that "[t]he intent is that this Bond [when required by statute] shall be construed as a statutory bond and not as a common law bond." Claimants of a statutory bond are subject to the statutory notice procedures of RSA 447:17 and RSA 447:18. Thus, the language of the defendants' bond, read as a whole, must be construed to include, rather than waive, the statutory notice requirements.

*Fastrack Crushing Servs.*, 149 N.H. at 665–66.

In the *Fastrack* case, the court accepted as determinative the parties' statement of intent for how the bond would be construed. Aegis argues that this Court should likewise treat as determinative the following sentence from Paragraph 13: "The intent is that this Bond shall be construed as a statutory Bond and not as a common law bond." The Court disagrees. Nothing about Tennessee case law suggests that the parties' statement of intent in a bond is determinative of whether the bond

is a common law or statutory bond. Under Tennessee law, courts look at (1) whether the bonds provide suppliers of labor and materials with more rights and privileges than those called for by the statutes, or stated another way, whether the obligations of the surety and contractor go beyond the statutory obligations, (2) whether the bond references the relevant Tennessee Code provisions, and (3) whether the bond contains notice or time limitations. *White's Elec.*, 1999 WL 605654, at *10; *see also Koch*, 924 S.W.2d at 74. There is no indication from the Tennessee cases that a Tennessee court would give effect to the parties' statement of intent that a bond be considered a statutory bond when all other established factors weigh in favor of it being considered a common law bond.

This Court also disagrees with the *Fastrack* court in terms of the emphasis given to that one sentence referencing intent. First, taken in context, that sentence could merely mean that the parties agreed that the intent was to maintain the validity of the bond and that the integrity of the construction project should not be jeopardized by a conflict with the minimum standards under the statute. Further, it seems irrational to have multiple provisions of a contract expand upon the scope of coverage and the surety's potential exposure under the bonds, only to have a single clause essentially eliminate all those bargained for contractual terms.

This Court finds much more persuasive a similar case decided by the Michigan district court, *Trustees for Michigan Laborers' Health Care Fund v. Warranty Builders, Inc.*, 921 F. Supp. 471 (E.D. Mich. 1996). That court was asked to determine what notice provision applied when the bond and statute differed. *Id.* at 475. The bond and the statute required notice 90 days after last performing labor or furnishing materials, but the statute also required notice 30 days after *first* performing labor or furnishing material. *Id.* Defendant relied on the following provision of the bond, which is the same in all material respects as Paragraph 13 in the Aegis Bonds:

> 13. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and the provisions conforming to such statutory or other legal requirement shall be deemed

> incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not a common law bond.

*Id.*

The Michigan district court interpreted that paragraph 13 as a "savings clause", explaining as follows:

> Defendant argues that the statutory language, read in conjunction with the bonding contract, required plaintiffs to give notice not only within ninety days after plaintiffs' completion of work, but also within thirty days after commencement of work. Defendant contends that this additional requirement under the statute is in conflict with the contractual bond notice requirements and, therefore, is incorporated into the bonding contract, requiring plaintiffs to comply with the additional statutory, thirty day notice requirement.
>
> In response to this argument, plaintiffs rely upon two cases in which the courts considered the present issue under nearly identical facts. In *Hub Electric Co., Inc. v. Gust Const. Co., Inc.*, 585 F.2d 183 (6th Cir. 1978), and *Royalite Co. v. Federal Ins. Co.*, 184 Mich. App. 69, 457 N.W.2d 96 (1990), both the Sixth Circuit and the Michigan Court of Appeals held respectively that where the bond on a public construction contract provides for an expanded notice period, broader than that required by state law, notice within that period of time is sufficient and the statutory requirement of notice within thirty days after commencement of labor or supply of materials is ineffectual. *Hub Electric*, 585 F.2d at 187–88; *Royalite*, 184 Mich. App. at 74–75, 457 N.W.2d 96. Defendant argues that these two cases do not apply to the present case and must be distinguished because the bonding contracts in both cases did not contain an incorporating clause such as paragraph 13 nor did they express an intent to construe the bond as a statutory bond. While these are significant differences, the reasoning of the courts in *Hub Electric* and *Royalite* are still persuasive and they control the outcome of this issue.
>
> In reaching its conclusion, the court in *Hub Electric* reasoned:
>
> While it is altogether sensible to hold that a surety may not restrict its own liability to defeat the statutory purpose of requiring a bond and that a contractor and a materialman may not unilaterally stipulate to waive a condition of the bond to the prejudice of the surety, there seems no good reason in Michigan law or in common sense to hold that the surety itself may not provide for more generous or less restrictive coverage than

the minimum required by the statute.... We therefore hold that the surety by its bonding contract may agree to accept a greater liability than that required under the Michigan bonding statute, although for reasons of public policy it may not contract for less. The statute specifically provides that the payment bond is solely for the benefit of the claimants, and nothing suggests that the Act was intended to establish a ceiling as well as a floor upon the liability which a surety may undertake by contract. Because the bond here provided only for the 90–day notice and the trial court has correctly held that the plaintiff had complied in all respects with the conditions of the bond as written, plaintiff is entitled to recover upon it.

585 F.2d at 187–88. Thus, if plaintiffs have complied with the notice provisions of the bonding contract, then the more restrictive provisions of the state statute do not preclude their recovery under the bond.

The question is whether the language of paragraph 13 of the bonding contract incorporates the thirty day notice requirement of the Act. The Court finds that it does not.

*Id.* at 476.

The Michigan court concluded that its paragraph 13 served the purpose of a "savings clause" that would preserve the legality of the bond in situations where the bond terms were in conflict with the statute. If a conflict arose, state law would supersede the conflicting provisions in the bond. *Id.* But the court found that an expansion of the notice requirements was not a conflict with the statute since it still met the statutory minimum. *Id.* at 477. According to the court, the notice requirements in the statute "provide a floor, not a ceiling, and where a more generous period is provided by contract, that period is controlling." *Id.*

The Michigan court also relied on the fact that the bond did not incorporate any state law provisions that were otherwise omitted from the contract but purported to delete any provisions in conflict with the statute. *Id.* To treat paragraph 13 as taking away greater rights provided by the contract "would allow the surety to profit by its own ill-drafted bond notice requirements." *Id.* According to the Michigan court, "[w]here the bonding contract sets terms less stringent upon the laborer, the surety

must be bound by its language, especially where that language is relied upon to the laborer's detriment." *Id*.

The Court agrees with the approach taken by the Michigan court and finds it much more consistent with Tennessee law than the rationale of the New Hampshire court. This Court cannot accept the more extreme interpretation that a single clause in the contract, apparently included to assure compliance with minimum state standards, should be construed as eliminating other, significant contractual provisions that expanded the rights well beyond those minimum requirements.

The Court concludes that Paragraph 13 is simply a "savings clause" that would only supplant a bond term with a statutory term if the bond term truly conflicted with the statute such that it failed to satisfy the statutory minimum. Since Tennessee courts interpret the bonding statute as setting forth minimum requirements that parties are free to enhance or alter so long as not providing less than the minimum, enhanced or greater written bond rights do not conflict with the Tennessee statutes. S*ee Koch*, 924 S.W.2d at 74.

### IV. Other Issues Raised for Partial Summary Judgment

Two other issues were raised that potentially could be determined on partial summary judgment.[2] However, neither issue is relevant to these proceedings unless the Court had determined that the Bonds are statutory bonds in nature. At oral argument, Hawkins & Price urged the Court to provide what would essentially be an advisory opinion on at least one of these matters even if the Court found the Bonds to be common law bonds. The Court declines to do so considering its ruling that these are common law bonds.

---

[2] Those issues are:
1. If the Bonds are statutory bonds, does the phrase "completion of such public work" in Tenn. Code Ann. §§ 12-4-205 and 12-4-206 mean "substantial completion" or "final completion"?
2. If the Bonds are statutory bonds, did the January 31, 2022 email exchange between the attorneys for Hayes Pipe and the Debtor comply with the content and delivery requirements for such notice found in Tenn. Code Ann. § 12-4-205?

## V. Conclusion

For the foregoing reasons, the Court concludes that the Bonds are common law bonds and, therefore, the contractual terms pertinent to the dispute over sufficiency of notice must be applied. The written terms of the Bonds must govern, without substitution of statutory terms.

IT IS SO ORDERED.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.